AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Orange iPhone<br>Seizure No. 2026250400116201-0007<br>("Target Device 1") | )<br>)<br>)<br>)<br>)<br>)    Case No.   26-MJ-2599 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 31 USC Sec. 5332 | Bulk Cash Smuggling into or out of the United States |

The application is based on these facts:

See Attached Affidavit of HSI Special Agent Joshua Keizer, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Joshua Keizer*
*Applicant's signature*

Joshua Keizer, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
     telephone      *(specify reliable electronic means).*

Date:    05/01/2026

*Judge's signature*

City and state:   San Diego, California     Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Special Agent Joshua Keizer, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic devices (the **"Target Devices"**), currently in the custody of the HSI San Diego, California:

> Orange iPhone
>
> Seizure No. 20262504001116201-0007
>
> (**"Target Device 1"**)
>
>
> Gray iPhone
>
> Seizure No. 20262504001116201-0008
>
> (**"Target Device 2"**)

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 31, United States Code, Section 5332, as further described in Attachments B. The requested warrant relates to the investigation and prosecution of Rhynell COATNEY ("Defendant") incident to his arrest for bulk cash smuggling on April 23, 2026. At the time of his arrest, COATNEY was the driver of a 2022 Toyota minivan with $125,900 concealed within a non-factory compartment on the floorboard of the vehicle and a loaded Glock 22 firearm with an auto sear switch and extended magazine. The Target Devices are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

**AFFIDAVIT**

I, Special Agent Joshua Keizer, being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices (the **"Target Devices"**), currently in the custody of the HSI San Diego, California:

> Orange iPhone
>
> Seizure No. 2026250400116201-0007
>
> **("Target Device 1")**

> Gray iPhone
>
> Seizure No. 2026250400116201-0008
>
> **("Target Device 2")**

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 31, United States Code, Section 5332, as further described in Attachments B. The requested warrant relates to the investigation and prosecution of Rhynell COATNEY ("Defendant") incident to his arrest for bulk cash smuggling on April 23, 2026. At the time of his arrest, COATNEY was the driver of a 2022 Toyota minivan with $125,900 concealed within a non-factory compartment on the floorboard of the vehicle and a loaded Glock 22 firearm with an auto sear switch and extended magazine. The Target Devices are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

**BACKGROUND**

3.    I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December of 2023. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to my employment with HSI, I was employed as a Detention Enforcement Officer (DEO) with the United States Marshals Service.

4.    Based upon my training and experience as a law enforcement officer, I am familiar with the ways in which bulk currency smugglers and narcotics traffickers conduct their business. During the course of my duties, I have (a) assisted case agents with financial and drug-related investigations; (b) conducted inbound and outbound inspection and interdiction of bulk cash; (c) participated in the execution of search warrants related to financial and/or drug investigations; (d) assisted with arrests for financial and drug-related offenses and (e) interviewed criminal defendants, witnesses, and informants in furtherance of financial investigations and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of bulk cash smugglers, drug traffickers and those associated with the smuggling subculture. I know from my training and experience that bulk cash smuggling is commonly closely tied to narcotics trafficking and alien smuggling activity, as the movement of bulk cash is often used to repatriate the illicit proceeds of cross-border smuggling back to Mexico and other foreign countries.

5.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for bulk cash and narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving large quantities of bulk cash. Typically, load drivers engaged in smuggling bulk cash across the border from the United States into Mexico are in telephonic contact with co-conspirators immediately prior

to and following the crossing of the load vehicle, at which time they receive instructions when to cross the border, and, in some cases, where to retrieve the vehicle which will be used in the smuggling event. Bulk cash smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular telephones.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in bulk cash smuggling and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in bulk cash smuggling may yield evidence:

a.  tending to indicate efforts to import/export bulk currency into or out of the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the import/export of bulk currency into or out of the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the import/export bulk currency into or out of the United States;

d.  tending to identify travel to or presence at locations involved in the import/export of bulk currency into or out of the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

## FACTS SUPPORTING PROBABLE CAUSE

7.      On April 23, 2026, at approximately 5:15 PM, a Customs and Border Protection Officer (CBPO) was conducting outbound enforcement operations at primary vehicle lane #7 at the San Ysidro Port of Entry lanes leading to Tijuana, Mexico. The CBPO stopped a red Toyota Mini Van ("the vehicle") bearing a California license plate to be inspected before going into Mexico. The CBPO noticed the temporary license plate was not the correct numeric sequence.

8.      The CBPO approached the vehicle, began his inspection, and identified the driver and sole occupant as Rhynell COATNEY ("COATNEY"). The CBPO asked COATNEY where he was going. COATNEY replied "Mexico". The CBPO asked COATNEY if he had any cash or currency that would be in the amount of ten thousand US dollars or more. COATNEY replied "No, I have like 500 or 600 dollars and no pesos." The CBPO went behind the vehicle to double check the license plate and noticed the California temporary license plate looked counterfeit because the number sequence was incorrect. The CBPO asked another CBPO to query the vehicle information as the CBPO continued with his inspection. The CBPO asked COATNEY if the vehicle was his vehicle or a rental. COATNEY replied "No it's a rental from Turo, my wife set it up for me." The CBPO asked COATNEY if he had the rental agreement on his phone or app. COATNEY replied "Sorry, no I don't have any of that information, my wife has all that and they mailed her the fob (showed the key fob) but no I don't have that information." The CBPO conducting a query on vehicle found no information on file.

9.      The CBPO conducting the inspection escorted the vehicle to the secondary inspection area. Once in the secondary inspection area, the CBPO told COATNEY to turn off the vehicle, leave his cellular phone in the vehicle, and make sure he grabbed all his cash and to leave nothing inside. A CBPO, who is a canine handler, utilized his currency,

firearm, and ammunition detection canine named "Milo." Milo alerted to trained odor between the driver and rear passenger seat area.

10. During inspection, the CBPO found a black sling bag in the backseat that emitted a strong aroma of Marijuana. The CBPO discovered a variety of Marijuana products. As the CBPO continued to inspect the vehicle, the CBPO discovered a Glock 22 firearm with an extended loaded magazine. The Glock firearm was located under the passenger side floormat.

11. While another CBPO inspected the trunk area, the CBPO observed discrepancies within the floor panel. The CBPO began to pull back the floor carpet and lifted the floorboard. A compartment was discovered underneath the floorboard where the CBPO discovered one bundle of currency wrapped in cellophane located inside of that compartment. The trunk compartment was closed with a mechanical latch that was operated by a mechanical actuator. A wire connected to the latch was followed back to the driver seat and a button was found on the side of the driver seat that operated the trunk latch for the compartment in the trunk. A second button was discovered on the driver seat which operated a second compartment located in the front passenger seat underneath the seat cover. The front passenger compartment was also operated by a mechanical actuator. The front passenger compartment was empty. A currency count was conducted for the currency found in the trunk compartment. A total of $125,900.00 US dollars was discovered.

12. COATNEY was placed under arrest at approximately 5:25 PM.

13. During a post-Miranda interview, COATNEY admitted he was aware of the thousands of undeclared dollars. COATNEY claimed he did not want to declare the money to CBP because he believed someone in Mexico would be alerted to the declared money and it would be stolen. COATNEY acknowledged ownership of **Target Device 1** and **Target Device 2** during the Miranda interview.

14. COATNEY was arrested and charged with a violation of Title 31, United

States Code, Section 5332, Bulk Cash Smuggling Into or Out of the United States (Felony). Based upon my experience and training, consultation with other law enforcement officers experienced in bulk cash smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the smuggling of bulk cash into or out of the United States. Further, in my training and experience, bulk cash smugglers may be involved in the planning and coordination of a bulk cash smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the bulk cash. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on March 23, 2026, up to and including April 23, 2026.

**METHODOLOGY**

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data

contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16.    Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

18.    Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

19.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices 1 and 2** will yield evidence of Defendant's violations of Title 31, United States Code, Sections 5332. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A1 and A2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Joshua Keizer*

Special Agent Joshua Keizer
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 1st day of May, 2026.

Honorable Michael S. Berg
United States Magistrate Judge